IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONIA DENHAM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 05 C 3128 |
| | ) |
| JO ANNE BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Tonia Denham's ("Denham") motion for summary judgment and Defendant Joanne Barnhart's motion for summary judgment. For the reasons stated below, we deny both motions for summary judgment and remand the instant action to the Social Security Administration ("SSA") for proceedings consistent with this opinion.

### BACKGROUND

Denham filed her first application for Disability Insurance Benefits and Supplemental Security Income (collectively "SSI Benefits") in May 2000, alleging

1

that she became disabled in January 2000. After a hearing before an Administrative Law Judge ("ALJ"), Denham's first application was denied by the ALJ in August 2001, and by the SSA Appeals Council in March 2003. Denham appealed the SSA's denial of SSI Benefits to this court, and on July 23, 2004, we entered an opinion remanding the case to the SSA for further proceedings in accordance with our ruling. A second set of hearings before an ALJ were held on January 5, 2005. On February 22, 2005, the ALJ again denied Denham's request for SSI Benefits for the time period between January 24, 2000, and August 20, 2001. Denham appealed the ALJ's second denial of her SSI Benefits to this court on May 25, 2005.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). When determining if substantial evidence exists, the court must review the record as a whole but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel,* 179 F.3d 1066, 1071-72 (7th Cir. 1999). Deference should be given to an ALJ's determinations relating to credibility and should be

reversed only if the determinations are "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990)). By contrast, the ALJ's legal conclusions are reviewed de novo. *Aidinovski v. Apfel,* 27 F.Supp .2d 1097, 1101 (N.D. Ill. 1998). An ALJ must also provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford,* 227 F.3d at 872 (stating that an ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). Further, in reviewing a decision of the ALJ, the court must confine its review to the explanation and reasoning given by the ALJ. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002).

## DISCUSSION

The SSA employs a five-step process to evaluate applicants for federal disability benefits. First, if an applicant is engaged in substantial gainful employment, that applicant does not qualify for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the applicant does not have a sufficiently severe physical or mental impairment, the SSA will deny disability benefits. *Id.* Third, if the applicant's impairment or combination of impairments satisfies or is medically equivalent to one of a series of enumerated disability "listings," the SSA will find that the applicant is disabled. *Id.* Fourth, the SSA calculates the applicant's "residual functional capacity" ("RFC") with the impairment, and if the SSA finds that the applicant can still perform the same relevant work after the impairment as

3

before, the SSA will deny benefits. *Id.* Finally, under the fifth step ("Step Five"), using the same RFC along with the applicant's age, education and work experience, the SSA determines whether the applicant can adjust to other work, in which case the SSA will deny disability benefits. *Id.*

This process is structured so that if an applicant satisfies steps one through three, the inquiry ends and the SSA finds the applicant disabled. *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995). However, if the applicant satisfies the first two steps but does not satisfy the third, the inquiry proceeds to the fourth and, possibly, the fifth step. *Id.* In the instant action, Denham claims that under Step Five, the ALJ improperly credited the testimony of the vocational expert who testified in her case. Denham also argues that the ALJ failed to make a proper credibility determination.

I. Step Five

Denham argues that the ALJ improperly completed the analysis under Step Five when he "improperly credited the vocational expert's testimony and improperly failed to order that documentation be provided" to Denham. (D. Mot. 7). The Seventh Circuit has held that "[a] vocational expert is 'free to give a bottom line' [when testifying before an ALJ,] but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004)(quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). The

Seventh Circuit has also stated that "'[i]f the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable.'" *Id.* (quoting *Donahue*, 279 F.3d at 446). However, at the same time, it is clear that "the standards by which an expert's reliability is measured may be less stringent at an administrative hearing than under the Federal Rules of Evidence." *Id.* at 910.

In the instant action, the vocational expert began his testimony regarding the work opportunities for Denham on January 4, 2004, by citing the specific Department of Labor and U.S. Census Bureau statistics on relevant jobs in the Chicago metropolitan area. These statistics showed that there are approximately 5,000 general office clerk positions at the sedentary level and 1,408 sedentary information clerk positions. (AR 281). Denham did not object to these findings. The vocational expert then estimated that about 50 percent of these positions would allow for a sit/stand option, as Denham's impairments required. The vocational expert based this determination on his 17 years as a job placement specialist who placed individuals into employment positions, and on the over 100 job analysis studies that he performed for individuals. These job analysis studies consisted of contacting 20 to 25 potential employers to determine what positions they may have open for a person with specific limitations. The determination by the vocational expert that about 50 percent of the positions appropriate for Denham would allow a sit/stand option was based on these studies and on the vocational expert's past work

experience.

At the hearing second hearing before the ALJ, Denham's attorney requested to see the job analysis studies. However, the ALJ denied this request, based on the fact that the studies contained confidential information about other individuals and that a specific individual's study with his or her specific limitations would not necessarily be directly relevant to Denham's limitations. The vocational expert did offer to produce a blank study form to Denham, which would show the type of questions and information that led the vocational expert to determine that 50 percent of available positions would allow a sit/stand option.

Denham now argues that the ALJ's denial of SSI Benefits should be reversed or that this case should be remanded to the ALJ for further proceedings, due to the fact that Denham was not provided with the job analysis studies conducted by the vocational expert and relied upon by the ALJ in denying SSI benefits to Denham. Denham primarily bases this argument on *McKinnie v. Barnhart*, 368 F.3d 907 (7th Cir. 2004). In *McKinnie*, the Seventh Circuit held that the ALJ erred in not requiring the vocational expert in that case to produce the data and evidence supporting the vocational expert's opinion after the vocational expert "did not substantiate her findings with a written report or other documentation to substantiate her figures, and [gave] vague responses to [the applicant's] questioning . . . ." *Id.* at 911. In addition, in *McKinnie*, the vocational expert said that she would only produce the requested data if the plaintiff paid for it, which the court said went against the

presumption that "a vocational expert establishes the foundation for her opinions before she expresses them at a hearing." *Id.*

Defendant argues that it was not necessary to provide Denham with copies of the job analysis studies because the vocational expert's answers at the hearing, unlike in *McKinnie*, "were not vague and insufficient; rather he provided a detailed and credible explanation of how he reached his conclusion." (S. Resp. 8). Although we agree that the vocational expert in this case gave a clear and detailed explanation of how he reached his conclusions regarding the number of jobs available to Denham, the Seventh Circuit has made it clear that even though "[a] vocational expert is 'free to give a bottom line,' . . . the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*, 368 F.3d at 911 (citing *Donahue*, 279 F.3d at 446).

In the instant action, Denham requested the data supporting the vocational expert's opinion, but was not provided the data, which violates the rule set forth in *McKinnie*. However, we do not agree with Denham's argument that the vocational expert's statement regarding whether he had any studies that included the exact limitations as Denham "supports only one reasonable conclusion [which is] that Ms. Denham was disabled during the relevant time period." (D. Rep. 5). The vocational expert, rather than saying definitively that his job analysis studies would not be relevant to Denham, only stated that they might not have the exact same limitations

7

as Denham. (AR 287). Denham has cited no case law to support her claim that any data used in reaching the vocational expert's decision must fit every single limitation that she has. In addition, it is possible that, upon remand, the vocational expert will produce more data that is directly relevant to Denham's case. Therefore, based on the above, we remand this case to the ALJ to conduct a new Step Five analysis, after Denham is provided with the data underlying the vocational expert's determination regarding the employment opportunities available to Denham. The job analysis studies should be provided to Denham in a redacted format to protect any confidential information relating to other individuals.

II. Credibility Determination

Denham also argues that the ALJ failed to properly evaluate Denham's credibility. The applicable Social Security Administration regulation states that in making a credibility determination, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement [regarding a claimant's credibility and] [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)(stating that "[w]hile the ALJ is not required to address every piece of

evidence, he must articulate some legitimate reason for his decision [and that] [m]ost importantly, he must build an accurate and logical bridge from the evidence to his conclusion"). In the instant action, the ALJ stated in his opinion that he found Denham's testimony "not totally credible for the reasons set forth in the body of the decision." (AR 256). The body of the ALJ's opinion is several pages long, does not discuss Denham's credibility directly at all, and in fact includes a number of statements that could support a finding that Denham was credible. The ALJ did not in any way explain which of the statements in the body of his decision supported his credibility determination, and thus did not "build [the] accurate and logical bridge from the evidence to his conclusion" that is necessary. *Clifford*, 227 F.3d at 872. Therefore, we find that the ALJ did not make a proper credibility determination and, on remand, the ALJ's decision should contain a proper assessment of Denham's credibility.

## CONCLUSION

Based on the foregoing reasons, we deny both motions for summary judgment and remand the instant action to the SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 23, 2006